Thank you. Good afternoon. We're here to have oral argument in the case of United States of America v. Christopher Miller, case number 24-2199. We'll hear for counsel for appellant first. Please introduce yourself and let us know how much time, if any, you request for rebuttal. Chris Opel May it please the court. I'm Chris Opel. I'm representing the appellant, Christopher Miller. I'm requesting three minutes of rebuttal time. Judge Goldberg Sure, that's granted. Chris Opel Thank you. First of all, it's an absolute honor for myself and my colleagues that have traveled here from Old Sparrow, Pennsylvania today to be in this courtroom. The court has requested us to address whether the Third Circuit holdings in Nassir and Adair affect the applicability of Helbling and how the United States Sentencing Guideline 3B 1.1a should be interpreted following Nassir and Adair. A reading of Adair indicates that the holding in Helbling is now called into question and must be reevaluated. Judge Goldberg Well, Adair had to do with a leader organizer. Chris Opel That's correct. Judge Goldberg Which is different from what we have here. Chris Opel That's correct, yes. Adair did address different terms of 3B 1.1. But Adair does state that, well, Adair in footnote 4 and 5 indicates that Helbling is no longer good law. In footnotes 4 and 5, Adair states the binding 15 other cases that did evaluate 3B 1.1a for different provisions, whether it's the leader organizer provision or as Helbling was the otherwise extensive analysis. And Adair states that Helbling and those 15 other cases must be reevaluated under the Kaiser process. Specifically, Helbling did not engage in the Kaiser process that we know through Adair and Nassir is now required for the district courts to do in order for them to look to the guideline commentary in order to interpret the sentencing guidelines. Judge Goldberg So how does this case fit with that Kaiser analysis? Chris Opel Well, my first position would be that it's not ambiguous. I do not believe that in evaluating just the textual meaning of 3B 1.1a that there's any kind of ambiguity that would require us to then go further to step two in the Kaiser process. Judge Goldberg Is it is not otherwise extensive? Doesn't it call into question whether that means number of people, whether that means money, whether that means geography? Isn't it capable of more than one reading? And isn't that our test? Chris Opel I think that under the test, we look to the structure of the guideline itself and the context of it. This 3B 1.1 is the role enhancement. I believe that otherwise extensive is used to enhance extensive leadership. I do not believe that by a plain reading of otherwise extensive in 3B 1.1a that you could take that into the context of geographical scope. Judge Goldberg Can I tease that out? Can I tease that out? I'm sorry for interrupting. Can I tease that out just as a matter of grammar because we have was a leader or organizer of a criminal activity. And then we have the word that. That involved five or more participants or was extensive. I thought it was more natural to read otherwise extensive is kind of modifying criminal activity, not organizer or leader. I don't know that we're saying the leader was otherwise extensive or the organizer was otherwise extensive. I think we're looking at the criminal activity to see if it was otherwise extensive. You said you read otherwise extensive as modifying leader or organizer. I heard and I understood Jennifer Adele's question to kind of. And she surely can weigh in if she reads it differently. But to say that no, otherwise extensive is focused on the criminal activity. So, I mean, at one level, we might have a new found ambiguity if you say it applies to leader organizer and then some of us think it applies to activity. Do you think it do you think it applies? Do you still think it applies to leader organizer? You think it's best read as applying to criminal activity? I believe in the context of the guidelines and looking at the history and scope and of its application, I think that it applies to leader or organizer. The reason for that is I believe that criminal activity that is otherwise extensive is that's called for in other sections of the sentencing guidelines. Like, for instance, in Miller's case itself, he had a sophisticated means enhancement because the scope of the criminal activity was extensive. OK, and therefore he received a sophisticated means to level enhancement school. So so maybe maybe the structure tells us something about the meaning of otherwise extensive in this context, in the specific context of this. Maybe we're looking at comparables of five or more participants if it's the sort of thing that is can be done or performed with five or more people. Maybe then we can begin to say, yes, now that gives us some dimension to what extensive means in a way that otherwise extensive may be used elsewhere without that ready comparable of five or more participants. And so it strikes me that the best the best play for saying that otherwise extensive has definite, concrete meaning is to say, well, we're using the reference of five or more participants. Do you think that makes sense? I do think that makes sense. And when I when I when I read this guideline, what I think of is actually something you would see in the media when when there's a big crime bust and you might see a prosecutor who has a big picture with and it's a pyramid of a bunch of different mugshots and there there's an organization, a criminal organization. And clearly there's a leader and individuals who are under that that split off of that. I read otherwise extensive to refer to that scope of a criminal enterprise or a criminal organization, not criminal activity, criminal activity. Yeah. So let's say we don't agree with you. Let's say we find it genuinely ambiguous. Then then where do you where do you with that? I believe if it is genuinely ambiguous, that's still the commentary should not be accorded any weight because of the the holdings in Mercado and banks. They indicate that if the guideline commentary is expanding the definition of the guidelines, it should not be given any weight. How does this expand? I mean, commentary says you look at the participants and their roles, you look at the people, the number and their roles. How is that expanding? I mean, I think just how you described it, Judge, I think that just that plain text should be it. But then it goes on to further describe to include who might who might be a participant, who might not be a participant. And is and I believe that a participant is somebody who's criminally responsible, who has a mens rea towards the criminal act. However, Helbling and some of these other cases brought into that calculation that the participant and non participant and non participant that's counted as a participant. Well, that doesn't that make the word participant ambiguous then? Because to me, so a couple of things just by way of benchmark. We should ask a question. Yeah, I was saying isn't isn't isn't participate ambiguously. Yeah, I don't think that participant is an ambiguous term. I think that we could we could look to the dictionary definition in Marion Webster or in Black's odd dictionary of what participant is defined as. And I think that that would be sufficient for courts to. But I don't know that participant. Let me just give you two examples. Every now and then you hear someone say they were willing participant and every now and then you say, oh, this person was an unwitting participant in this. And so if those modifiers willing and unwitting change the entire meaning of the term participant, it's strange for me to think that participant already builds in a mens rea requirement when when it takes a modifier to tell us what it is. And so I think Judge Roth might be onto something that we don't know from this, whether participant includes those who are criminally culpable or those who just, you know, were inadvertent mules and had something stuffed in their backpack and ran it to the other side of town. We don't know what that is, but you could be a leader organizer of either, I think. And that's what that's one reading of the enhancement. No, I think that that that would be fair. That's that's fair to read it that way. If you use a dictionary definition, aren't the 13 other people participants participate in means to be involved in and they were involved. So you have five or more participants right there. Well, I think that the the the case law would dictate that would mean that every victim or every drug buyer is a I'm just going on the dictionary definition of participant. Somebody participates in something, they're they're involved in it. I mean, I'm thinking the commentary actually, you know, narrows the sphere. I understand where you're coming from, Judge. I, I believe I would take the opposite position there. I believe that participant is referring to the criminal activity and to participate in criminal activity would be to to knowingly. Well, you have you have Reynolds here who and really your argument on appeal really has to do with the two, the wife and the neighbor. So you have Reynolds admitting his culpability and you have his wife involved and getting friends and neighbors and relatives, which seems to me to be pretty much involved in participants. So I guess I'm I'm not sure where I'm not sure how you push back on the on the otherwise extensive piece when we're when we're looking at all of these people. So my argument on appeal obviously got narrowed down as as the court requested supplemental briefing. The initial argument was to analogize Reynolds and Ms. Moran to Gerkes and I believe Kurtz or Katz from the Helbling case, who were individuals that under your analysis, Judge, were participants. They they did things they I believe they signed documents, but they they weren't as the two participants, the two knowing participants in Helbling were two lawyers who actively knew that they were engaging in fraudulent transactions and knew that they were covering something up. I see that I'm out of time. You know, let me just ask one more question. Then if the panel has any more questions, then we'll hear from your own. But but, you know, I'm looking at this interpretive note three, the application note three. If if we go there and we say, you know what, we're going to accept that kind of meaning and understanding of the term otherwise extensive. Is there any wiggle room for your your client avoiding the plus four under that circumstance? I mean, I believe that my client could potentially avoid the plus four under there because it says that for otherwise extensive, a fraud that involved only three participants, but use the unknowing services of many outsiders. My client didn't necessarily use the unknowing services. He did use my argument would be he used other people. Those other people were were akin to, I would say, drug users or somebody who was purchasing contraband. And I believe it was but they supply the information that he needed. They did just like just like a drug purchaser and they got kickbacks also. They did. And I believe that that would just be like a drug purchaser saying I want five grams of methamphetamine and here's here's the money for that. Where, you know, a drug dealer who has 100 different customers isn't necessarily a leader or organizer or the or 3B1.1 should say that that's an otherwise extensive. They supplied it with information but for which the crime couldn't have been committed, which is different from somebody who just purchases drugs. Yes, that's accurate. And that would also go back to my other position that application note three is expanding the terms of otherwise extensive. It's broadening the scope of the guideline itself. It's including more things than the plain language of the guideline. All right. Thank you. We'll hear from you on rebuttal. Okay, thank you. Mm hmm.  Good afternoon. May it please the court. Christian Hogsby on behalf of the government, the appellee under any reasonable reading of section 3B1.1 in the record. In this case, the district court committed no error in finding that Christopher Miller was subject to the leadership enhancement. The I think that the court wants to discuss the post Kaiser issues, but I just want to emphasize for the record that the only issue presented by the appellant in this appeal is a challenge to the district court's finding that the participants, Kelly Moran and Robert Reynolds, he claims should not have counted as participants. That is the only issue that's been raised on appeal. Not a challenge to the finding that he was a leader or an organizer and not a finding and not to the finding that more than a dozen quote unquote non-participants could be counted under this court's decision in Helbling. And I would just note on that point that when the government made this argument at sentencing, they argued that those more than a dozen individuals, and this is touching on something I think Judge Rendell was getting at, they easily could have been on the other side of the ledger. They could have been active participants. These folks got money. They provided identification. They provided the information that Mr. Miller knew and needed to carry out this extensive fraud scheme that he carried out over a considerable period of time. So although the court ultimately grounded its analysis in Helbling's holding, the government did argue that under any reasonable interpretation of this offense, it was extensive in nature. And I believe that the record would amply support this court, even if it were to reconsider its decision in Helbling in light of Kaiser and Adair and its precedents, that the record amply supports the district court's findings. I'm pleased to take the court's questions regarding the issues that you asked us to address in the supplemental briefs regarding the interpretation. We have in our supplemental filing endeavored to be candid with the court. The government would argue, as it did in Helbling, that the term otherwise extensive should be interpreted more broadly and in line with the majority of the courts of appeals that have considered this issue. I think I said that it was a slight majority. I actually think it's eight courts of appeals that consider a more broad basket of facts to support application of otherwise extensive prong. And that makes sense from an interpretive point of view. Judge Phipps was asking some questions about doing some sentence analysis. And the shortest word in the guideline, I think, is or. And it needs to do some work here. And it separates in a disjunctive manner five or more participants from otherwise extensive. Five or more participants or otherwise extensive. And as we pointed out in our supplemental filing, the ordinary meaning of the word otherwise is in some other way. That is modifying what came before it. It is otherwise, some other way from five or more participants, extensive. And the word extensive itself is pretty broad. In view of the fact that this case involves the question of numerosity, five or more, do we need to even get into whether otherwise extensive should go to the type of the organization or the extent of the organization? Well, Judge Roth, I'm inclined to say no. Or the type of activity that the organization is involved in. So I'm inclined to say no. But based upon the record in this case, there was a finding that there were two participants. And I think the court's conclusion, the district court's conclusion was based upon its determination that there were more than a dozen non-participants that formed the functional equivalent of five or more participants. Again, we believe that the record would amply support a finding that those more than a dozen other individuals, given the important role that they played and their clear knowledge of the offense that Mr. Miller was carrying out and their role in it and benefiting from it, would easily qualify as participants under the guidelines and its commentary. So yes, if you were to conclude that just based upon the individuals involved in this offense that were within Mr. Miller's orbit as he committed these crimes over an extensive period of time, yeah, I don't think that you would necessarily need to reach the issue of otherwise extensive. That may be true. But we also review facts at this stage for clear error. And so we're kind of in a weird spot here where the district court kind of construed participant a little differently than application note one does. And so it would strike me that if, do you have a path forward for saying, I'd like you to affirm on a participants only ground without reaching otherwise extensive, that wouldn't require additional fact-finding by a district court of who the participants are? Yes, Judge Phipps, and I wasn't suggesting this court venture into a fact-finding exercise. But it would require remand, basically. We'd say, hey, look, you know what I mean? What you did for participants wasn't how we read. We think point one goes. Are you going to say participants not ambiguous? No, I think participant is ambiguous. And I think you nailed it when you said willing and unwitting. And in fact, just yesterday as I was getting ready for this, I decided to throw into Westlaw a couple of searches, one of which was participa with an exclamation point drawing upon my Boolean search within three of unwitting. And I think the number was 461 cases. The first one that comes up as a second case that deals with this exact guideline provision. This court also has emphasized the importance of the modifier in a case called Dobson in 2005. And I have the citation for you. It's not that important, but it's 419F231. The court reversed a conviction for mail fraud because the district court failed adequately to instruct on the mens rea component. And in so doing, sort of observed that an unwitting participant in the fraud would not be criminally culpable. So it just goes to your point, Your Honor, that the word participant needs a little bit of help to know what the commission meant when it used that word. And the commission supplied that. When we filed our supplemental response in an act of candor, I think argued initially that Helbling is okay, even post Adair, recognizing what you observed in footnotes four and five, Your Honor, of Adair. Helbling did engage in an analysis before reflexively leaping to the commentary. And this court has, prior to Helbling, acknowledged that Section 3B1.1, the language of it is not obvious necessarily. I think it was in Katora, where the court said, although the language of Section 3B1.1 is not entirely clear. And then it went to the court's precedent. And Katora is 981F2nd 1398. So can I pick up on something that touched on earlier? You were talking about your supplemental brief and you were talking about the other circuits. And you said that you've got eight other circuits that you believe interpret the phrase otherwise extensive more broadly than application note three. So to me, this gets we're kind of pinched into a box, which says, follow the application note, unless we've got a Mercado or Banks problem where the application note just does its own thing.  And so it strikes me that we're at least looking pretty hard at note three. The only way that crosses my mind to justify kind of this broader approach is to say that note three is a little open-ended. It doesn't fully define otherwise extensive. It just says, when you're thinking about otherwise extensive, we want you to give some accounting for the participants, both willing and unwitting. And so like, what do we do there when the application note itself gives a little bit of guidance, but it's so much nicer in other parts of the guideline that say actual loss or X or something like this. And there's problems with that at times, but this one is more definition, but I don't know that anyone would say, aha, application note three fully and completely for all time defines otherwise extensive for purpose of 3B1.1A or B. Well, if I'm following you judge, let me try and pick it up there. I think it is a little tricky because I think that you have different components of the guideline itself that may be somewhat ambiguous participant being one of them. And the government would submit that the commission's analysis or guidance in the commentary regarding what it was meaning by the term participant is reasonable and holds up under a Kaiser analysis. But there could be another part of the guideline that itself may not be as ambiguous. And here, otherwise extensive arguably I think could give rise to a different kind of analysis. Again, going back to the fact that otherwise extensive is set off from other participants, I think one can reasonably question whether or not the guidelines commentary narrowing those terms is actually a reasonable interpretation of what those terms mean. And that's really what I think a lot of the majority of the courts find or at least is tacitly a part of their opinion. Are you saying that Helbling is no longer good law? I'm not, your honor. And in fact, we're bound by Helbling, are we not? Your honor, we believe you are. And that's why I was saying. I'm a little curious about where your argument is taking. Well, let me try to back up a minute, your honor. I was trying to respond to Judge Phipps's question. I might've been venturing a little further. We candidly do acknowledge that what the court said in Adair regarding Helbling and our response and our supplemental brief, I think candidly acknowledges something that maybe the government didn't even argue in Helbling. In Helbling, we argued for a more expansive interpretation of the guideline. My read of Helbling is that it was a prescient application of a Kaiser-like analysis. And therefore remains good law. Helbling, just to tease that out, Helbling has, it does wrestle with the fact that we're stuck with a little uncertainty here in the guideline itself, but it doesn't make a strict deference to one of the application notes. It adopts a test that was fashioned by the second circuit. It is kind of what you'd call a meld or what I'd call a meld of application note plus judicial gloss. After Kaiser, I don't know that we're in a realm where a deference can be application note plus judicial gloss. I think we're in a realm that forces us to just go with application note. That's the nature of deference. It's really hard to get deference now after Kaiser. But once you run the traps and get it, are we allowed to put a judicial gloss on application note three now as well, or shouldn't we just follow note three as it's written? And if it's uncertain, then as you say, it's not reasonable. I think what you're referring to as judicial gloss was an attempt by those courts to interpret the guideline as they believed it was intended to be interpreted. So I don't know that it was just judicial adventurousness in its interpretation. I think it was an effort to give meaning to what was in the guideline and that was informed by the commentary. But your honor, to the extent that there's an ambiguity in the guideline, we believe you would go to the commentary. And then what if there's an ambiguity in the commentary? Should we defer to it or should we put a judicial gloss on it? Or should we not defer to it? Or should we put a judicial gloss on it and then defer to the commentary plus judicial gloss? Well, there are a lot of layers of ambiguity. I'm trying to. No, it's stacking ambiguity. We've got ambiguity in the commentary, likely. And then we've got in the guideline, then we've got ambiguity in the commentary. If we've got ambiguity in the commentary, I could see one angle that would say, hey, that's ambiguous. It's not reasonable to defer to. It's not reasonable to just check out of the judicial mode and defer to something that itself is ambiguous. Another answer would say, no, work with it and then try to put a gloss and incur the ambiguity yourself. Which one is the government's position for the better approach? Thinking on my feet here, your honor, I think the second suggestion is probably the better one. I mean, I think the commentary is trying to get at something and provide an explanation. The ambiguity that you're identifying, it might be starting to fade for me a little bit regarding whatever is ambiguous within the commentary itself. Because I'm not sure I read the commentary as being ambiguous. I mean, I think what the commentary is saying is, for purposes of interpreting otherwise extensive, we're looking at sort of a headcount issue, the persons involved. And they're providing a kind of heuristic for determining whether in a large organization that might have a lot of unwitting participants that are controlled by a defendant and whose services are necessary and peculiar to the offense, that the guideline regarding the participant and otherwise extensive should be applied that way. And I think that makes sense. So my take on note three was that it requires, it gives us some clarity on otherwise extensive. It says do a headcount. But I don't know that I read note three is saying headcount is the only meaning of otherwise extensive. And if it was the only meaning of otherwise extensive, then I would expect the commentary not to have said unknowing services of many outsiders could be considered extensive. It would then seem that it's not headcount alone, it's going to be something else. So I thought what I'm saying why note three might be ambiguous is because it gives us some clarity, account for headcount. But it still doesn't round out what otherwise extensive fully means. We just know that we can't find something otherwise extensive without doing some sort of headcount along the way. Your Honor, I think the government would welcome what I think you're suggesting, which is the commentary gets you part of the way there, which is one of the things you could consider is a kind of headcount. But then again, if you look at just the terms themselves, otherwise extensive, and try to give meaning to that based upon, you know, it's expand, I mean, that word, those words are pretty broad. Courts have concluded that a fair textual interpretation of those words would allow for consideration of factors other than just a headcount. And I think that's also entirely reasonable interpretation of the guideline. And the government welcome the court embracing that interpretation to the extent that it finds it can do so post Kaiser. But in Helbling, we reasoned that bringing in a lot of other factors like number of victims and amount of money, etc, are accounted for in other enhancements. So it really makes sense to look at the people, the number of the people, what they did, their roles, etc, etc. So I mean, it seems like we reasoned, we made a reasoned choice, because so many other factors are taken through other enhancements. That was certainly part of Helbling's analysis. And I think it was one of the interpretive paths that Helbling was grounded in, was a concern about the possibility of double counting. I think that that's a reasonable concern for the court to have, I'm not sure that the concern necessarily that the guidelines necessarily contemplate all of the factors and other sections that might conceivably be drawn upon to conclude that a criminal activity was otherwise extensive. So I don't know that it's entirely the case that simply considering other factors would always lead to a double counting risk. And I think courts could, in the exercise of their discretion, make a judgment. I mean, these are discretionary guidelines, after all, as to whether or not for the sentence to account for that potential risk, Your Honor. What do you want us to do? Well, we want you to affirm the judgment, first and foremost. And again, I would...  Well, on the basis that the record here certainly supports the district court's finding that the offense in this case was, that the criminal activity in this case was otherwise extensive. Mr. Miller has not objected to the conclusion that he was a leader or an organizer. He has not objected to the fact that more than a dozen people were actively involved in this offense. And knowingly so, he's only challenged the finding that two individuals, one of whom pleaded guilty to his role in committing this offense with Mr. Miller, were themselves participants. We think that Mr. Miller is plainly wrong on that point and that the district court's decision is amply supported by the record. And we're asking you to affirm on that basis. Okay. Thank you very much. Thank you, Your Honor. Mr. Opa, I know you have three minutes for rebuttal reserved. Thank you, Judge. Judge, I want to first turn on what I think otherwise extensive means. I believe that otherwise extensive in this context looks to the control that a leader may have over the other participants who are knowingly engaged in the criminal activity. I think that otherwise extensive would look to how, if the defendant is telling other individuals in the criminal activity, you have to go here and do this. You have to pick up these drugs. So, I don't mean to interrupt because that may be true, but I kind of thought that your strongest argument that you would come with would be even the commentary's definition of otherwise extensive is ambiguous. And I thought you would come with that and say, and because that definition itself is ambiguous in the sense of we don't know if it just is head count only or head count plus, it's not reasonable to defer to an ambiguous commentary and hence you shouldn't. So, I thought you would come and say, I'll spot you. Even if you disagree with me on all the ambiguity in the commentary itself, you have to defer. The exercise under Kaiser is to defer to something, but you have to defer to something reasonable. And so, I thought your argument would be is even if we've got the genuine ambiguity, that definition is ambiguous itself, and it's unreasonable to defer to something that could have two meanings because that's not deference, that's guesswork. That's where I thought you'd come at it. You took a different approach and said, no, it has certain meaning. So, maybe if it has certain meaning, then if we agree with that meaning, then you would win. But what do you think of the other argument that it's ambiguous, don't defer? I think that that's an excellent argument and I agree with you. If my goal was to come in here and shoot down the guideline commentary, that's the strongest argument. I guess my, if you want to call it a middle ground type argument, I think is due to the circumstances of Mr. Miller's case himself. I've been with Mr. Miller throughout his representation and I just viewed him not to be exercising control or leadership or any of those extensive type factors over other individuals involved in this criminal offense, as I've seen in many, many other federal cases where there is an organization ship or criminal gang type scheme where you have clear power authority that's delegated to other participants. Briefly too, in Katora, this court stated that the guidelines policy of reducing disparity in sentences dictates management of non-culpable party does not warrant application of section 3B1.1. I believe while Katora is one of the cases in footnote four and five of Adair that's now called into question, I believe that that shows that the court has reason to limit the application of 3B1.1 to participants who are not knowingly engaged in the criminal conduct. Thank you very much. Thank you. We'll take the matter under advisement. Thank you for your advocacy both parties.